Victoria L. Nelson, Esq. (NV Bar No. 5436)
Email: vnelson@nelsonhoumand.com
Jacob L. Houmand, Esq. (NV Bar No. 12781)
Email: jhoumand@nelsonhoumand.com
NELSON & HOUMAND, P.C.
3900 Paradise Road; Suite U
Las Vegas, Nevada 89169-0903
Telephone:    702/720-3370
Facsimile:    702/720-3371

*Electronically Filed On: March 5, 2014*

*Attorneys for Shelley D. Krohn, Chapter 7 Trustee*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

In re:

WILLIAM WALTER PLISE,

　　　　　　　　　Debtor.

Case No.  BK-S-12-14724-LBR
Chapter   7

**REPLY TO LIMITED OPPOSITION TO FIRST INTERIM APPLICATION OF NELSON & HOUMAND, P.C. FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED DURING THE PERIOD FROM SEPTEMBER 3, 2013 THROUGH FEBRUARY 7, 2014 AND FOR REIMBURSEMENT OF EXPENSES**

Date of Hearing:　　March 12, 2014
Time of Hearing:　　9:30 a.m.
Place: Courtroom No. 5, Second Floor
　　　　　　　　　Foley Federal Building
　　　　　　　　　300 Las Vegas Blvd., S.
　　　　　　　　　Las Vegas, NV 89101

Judge: Honorable Linda B. Riegle

　　　　Nelson & Houmand, P.C., (the "Firm"), counsel to Shelley D. Krohn, the Chapter 7 Trustee in the above-referenced bankruptcy case (the "Trustee"), hereby files this Reply to the *Limited Opposition To the First Interim Application of Nelson & Houmand, P.C. for Allowance of Compensation for Services Rendered During the Period From September 3, 2013 Through February 7, 2014 and For Reimbursement of Expenses* [Main Bankruptcy Docket No. 677] (the

- 1 -

"Reply").[1]

This Reply is based upon the accompanying Memorandum of Points and Authorities, the papers and pleadings on file in this case, and such other evidence that may be presented to the Court.[2]

Dated this 5th day of March, 2014.

              **NELSON & HOUMAND, P.C.**

              */s/ Victoria L. Nelson*
              Victoria L. Nelson, Esq. (NV Bar No. 5436)
              Jacob L. Houmand, Esq. (NV Bar No. 12781)
              3900 Paradise Road; Suite U
              Las Vegas, Nevada 89169-0903
              Telephone: 702/720-3370
              Facsimile: 702/720-3371

              *Attorneys for Shelley D. Krohn, Chapter 7 Trustee*

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure will be referred to as "FRCP" and the Federal Rules of Bankruptcy Procedure will be referred to as "FRBP."

[2] The Trustee also requests that the Court take judicial notice of all pleadings filed in the above-referenced bankruptcy case, including adversary proceedings, pursuant to Rule of Evidence 201, incorporated by reference by Federal Rule of Bankruptcy Procedure 9017.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Limited Opposition to the First Interim Application of Nelson & Houmand, P.C. for Allowance of Compensation for Services Rendered During the Period From September 3, 2013 Through February 7, 2014 and For Reimbursement of Expenses (the "Limited Opposition") [Main Bankruptcy Docket No. 677] is nothing short of an attempt by Tennille Plise ("Tennille"), the alleged ex-spouse of William W. Plise (the "Debtor"), to limit the Trustee's ability to administer the Debtor's bankruptcy. The sole argument in the Limited Opposition is that the attorneys' fees and costs in the Application of Nelson & Houmand, P.C. for Allowance of Compensation for Services Rendered During the Period From September 3, 2013 Through February 7, 2014 and For Reimbursement of Expenses (the "Application") [Main Bankruptcy Docket No. 674] is that Tennille has filed a proof of claim for a domestic support obligation in the amount of Four Hundred Twenty-Five Thousand Dollars ($425,000) (the "Proof of Claim"), and no administrative expenses should be paid by the Trustee until the Proof of Claim is paid in full. *See* Limited Opposition. This is the same argument that was advanced by Tennille when former counsel for the Trustee filed an interim application for compensation, and was rejected by the Court. *See* Limited Opposition to the First Interim Application of Cotton, Driggs, Walch, Holley, Woloson & Thompson for Allowance of Compensation for Services Rendered during the Period from July 17, 2012 through December 31, 2012 and for Reimbursement of Expenses during the Period from July 17, 2012 through and Including June 27, 2013 [Main Bankruptcy Docket No. 589]. In fact, the Limited Opposition is identical to the opposition that was filed to the interim application for compensation of former counsel to the Trustee. Moreover, while the Proof of Claim attaches a copy of the divorce decree entered into between the Debtor and Tennille, the Limited Opposition makes it clear that the basis for the Proof of Claim is a settlement agreement that resolved the claims for relief alleged in the adversary proceeding entitled *Krohn v. Plise, et al.* (Case Number BK-S-12-01214-LBR) seeking avoidance of a fraudulent transfer (the "Settlement Agreement"). According to Tennille's legal theory, she is entitled to a domestic support obligation in the identical amount of the sum that was agreed to

- 3 -

under the Settlement Agreement. Simply put, Tennille cannot file a Proof of Claim for a post-petition debt. Moreover, Tennille's facts do not satisfy three of the four elements required under Section 101(14A) for the establishment of a domestic support obligation because it is not owed to or recoverable by a spouse, former spouse, or child of the debtor; is not in the nature of alimony, maintenance, or support; and was not established pursuant to a divorce decree. *See* 11 U.S.C. § 101(14A).

What Tennille also fails to realize is that even if she has a valid domestic support obligation, such an obligation would have matured more than three hundred thirty-seven (337) days after the Petition Date, or the date that the Court approved the Settlement Agreement. *See* Order Granting Motion to Approve Settlement Agreement Pursuant to Federal Rule of Bankruptcy Procedure [Main Bankruptcy Docket No. 422]. This would make the Proof of Claim a post-petition domestic support obligation, the very type of claim that the bankruptcy code precludes a party from filing pursuant to Section 502(b)(5). *See* 11 U.S.C. § 502(b)(5) (providing that a proof of claim cannot be filed if it is based on a "claim [that] is for a debt that is unmatured on the date of the filing of the petition and that is excepted from discharge under section 523(a)(5) [domestic support obligation] of this title."). If Tennille believes that she is owed a post-petition domestic support obligation, she should utilize the provisions of the Bankruptcy Code that exempt collection activities for domestic support obligations from the automatic stay, prevent domestic support obligations from being discharged, and exclude domestic support obligations from the discharge injunction. *See* 11 U.S.C. §§ 523(a)(5), 524(a)(2), & 727(b)

Finally, in the event that the Court determines that Tennille is the holder of a valid pre-petition domestic support obligation, there will sufficient funds to pay her based on the filing of recently court-approved 9019 motions for compromise. During the period of time in which the Firm seeks compensation, settlements resolving adversary proceedings were approved by the Court which will bring no less than Nine Hundred Forty Thousand Dollars into the bankruptcy estate. Further, during this same period of time, the Trustee obtained the denial of the Debtors discharge under 11 U.S.C. § 727(a)(4) thereby allowing Tennille to look to the Debtor to enforce

her alleged post-petition domestic support obligations. It is highly unlikely, however, that Tennille will look to the Debtor to compensate her for the settlement of her adversary proceeding. In 2013 (long after her alleged divorce from the Debtor), Tennille transferred approximately Three Hundred Thousand Dollars ($300,000) into bank accounts controlled by the Debtor which he used for his personal expenses.

## II. LEGAL ARGUMENT

### A. The Court Should Disregard the Arguments in the Limited Opposition Because the Filing of a Proof of Claim for Post-Petition Domestic Support Obligations Is Not Permitted under the Bankruptcy Code

Section 502 governs the allowance of claims or interests in a bankruptcy case and provides that proofs of claims are disallowed to the extent that "such claim is for a debt that is unmatured on the date of the filing of the petition and that is excepted from discharge under Section 523(a)(5) of this title." 11 U.S.C. § 502(b)(5). Section 523(a)(5) is the bankruptcy code provision that provides a debtor is not discharged from his or her domestic support obligations. 11 U.S.C. § 523(a)(5). Because post-petition domestic support obligations are not part of the debt owed as of the date of the petition, such debts qualify as unmatured. *Burnett v. Burnett (In re Burnett)*, 646 F.3d 575, 582 (8th Cir. 2011). Thus, a creditor cannot file a proof of claim for post-petition domestic support obligations. *Id.*; *Foster v. Bradbury (In re Foster)*, 319 F.3d 495, 497 (9th Cir. 2003); *see also Young v. Young (In re Young)*, 497 B.R. 904 (Bankr. W.D. A.K. 2013). Finally, Section 507(a)(1) states that only domestic support obligations that "***as of the date of the filing of the petition in a case under this title***, are owed to or recoverable by a spouse, former spouse, or child of the debtor, or such child's parent, legal guardian, or responsible relative . . ." are entitled to first priority distribution in a Chapter 7 bankruptcy case. 11 U.S.C. § 507(a)(1)(A) (emphasis added).

The fact that a party cannot file a proof of claim for a post-petition domestic support obligation is demonstrated by other Bankruptcy Code provisions that provide an ex-spouse superior protection for post-petition support obligations. For instance, when a debt is a domestic support obligation, it cannot be discharged by an individual chapter 7 debtor. 11 U.S.C. §

- 5 -

523(a)(5). Consequently, once an individual debtor receives a chapter 7 discharge, the holder of a domestic support obligation claim is not subject to the statutory injunction barring enforcement of the debt against the debtor as a personal liability. See 11 U.S.C. §§ 523(a)(5), 524(a)(2), & 727(b). Moreover, a domestic support obligation may be enforced against property of the debtor, both during the chapter 7 case without violation of the automatic stay, and after entry of a discharge without violation of the discharge injunction. See 11 U.S.C. §§ 362(b)(2)(B) & 522(c)(1). This is so even when the property against which the domestic support obligation is being enforced has been exempted by the debtor in the bankruptcy case. See 11 U.S.C. §§ 522(c)(1). Section 522(c)(1) provides in pertinent part:

> Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose . . . before the commencement of the case, except—(1) a debt of a kind specified in paragraph . . . (5) of Section 523(a) (in which case, notwithstanding any provision of applicable nonbankruptcy law to the contrary, such property shall be liable for a debt of a kind specified in Section 523(a)(5). . . .

11 U.S.C. §§ 522(c)(1).

In the instant case, there is no dispute that the basis for Tennille's proof of claim for a domestic support obligation arose after the Debtor filed his bankruptcy petition. The Limited Opposition concedes that the Debtor did not owe Tennille any domestic support obligations prior to his bankruptcy filing on April 23, 2012. Specifically, the Limited Opposition states the following:

> Pursuant to the Divorce Decree, Tennille received from the Debtor $2.2 Million to date. However, instead of the full $1 Million for Alimony, on or about October 29, 2008, **Tennille agreed to receive** $350,000; a parcel of vacant land in Colorado, located at 8515 Hinsdale County Road, Hinsdale, Colorado ("Colorado Property"); a note for Cracked Egg; and Bank of George Stock, which lost its value.

See Limited Opposition, p. 2, ll. 21-25 (emphasis added).

Tennille concedes in the Limited Opposition that the Debtor's domestic support obligations under the Divorce Decree were satisfied prior to the Debtor's bankruptcy filing. See

- 6 -

Limited Opposition, pp. 2-3 [Main Bankruptcy Docket No. 677]. This is an affirmative admission that as of the date of the bankruptcy filing, there were no domestic support obligations due and owing by the Debtor and, thus, no claims for domestic support obligations that would be entitled to priority distribution under Section 507(a)(1). The Limited Opposition further confirmed that the basis for the proof of claim is the Settlement Agreement: "The Proof of Claim Deadline in this matter was February 28, 2013. ***However, Tennille did not have a reason to file a proof of claim until after this Court's Order Granting Motion to Approve Compromise and Settlement on March 25, 2013.***" *See* Limited Opposition, p. 8, ll. 22-25 (emphasis added). As a result, the basis for the Proof of Claim is the Settlement Agreement, which was approved by this Court on March 25, 2013 [Main Bankruptcy Docket No. 422], more than three hundred thirty-seven (337) days following the filing of the Debtor's Petition Date. In a Response to a Fee Application filed by Trustee's former counsel, Tennille clarified that the basis for the Proof of Claim is based completely on the Settlement Agreement: "In the settlement decree, Tennille exchanged her $425,000 of money (or equity in the Texas Property) for a $425,000 priority claim against the estate and for the trustee to dismiss all claims against her related to this action." *See* Response to Reply to Limited Opposition to First Interim Application of Cotton, Driggs, Walch, Holley, Woloson & Thompson [Main Bankruptcy Docket No. 607], p. 3, ll. 18-22. Further evidence that the Proof of Claim is completely based on the Settlement Agreement is the fact that the amount of the alleged domestic support obligation is Four Hundred Twenty-Five Thousand Dollars ($425,000), the identical amount that Tennille agreed to pay the Trustee in settlement of an adversary proceeding seeking to avoid a fraudulent transfer. A cursory review of the Settlement Agreement makes clear that the Trustee never agreed to allow Tennille to file a Proof of Claim in the Debtor's bankruptcy case as part of the negotiated settlement.

The Limited Opposition is nothing short of an attempt by Tennille to limit the Trustee's ability to administer the Debtor's bankruptcy estate by denying administrative professionals compensation on the basis that there is an outstanding domestic support obligation. This fact could not be any more obvious when it is considered that Tennille sold the Colorado Property, one of the items that she contends she received pursuant to the Divorce Decree, and transferred

approximately One Hundred Forty Thousand Dollars ($140,000) to the Debtor. The sale of the Colorado Property took place on or about April 9, 2013, sixteen (16) days after the order approving the Settlement Agreement was entered by the Court, the basis of which Tennille contends was when she first became aware she was owed a post-petition domestic support obligation.[3]

The question that must be asked is why Tennille is actively transferring assets to the Debtor if she believes she is owed a post-petition domestic support obligation. If Tennille strongly believes that she is owed post-petition domestic support obligations from the Debtor then she should utilize the protections afforded to ex-spouses to under the Bankruptcy Code including, but not limited, the exception to the automatic stay as well as the nondischargeability provisions under Section 523(a)(5), and begin collection activities against the Debtor. Accordingly, the Court should disregard the arguments advanced in the Limited Opposition and grant the relief requested in the Application because the basis for the Proof of Claim is the Settlement Agreement, which was executed post-petition.

**B.    The Court Should Grant the Fee Application Because Tennille Does Not Hold a Valid Claim for a Domestic Support Obligation**

Section 507 governs classifies the expenses and claims that have priority in a bankruptcy case, and provides that certain "domestic support obligations" are entitled to first priority to payment:

>    (a)    The following expenses and claims have priority in the following order:
>
>    (1)    First:
>    (A) Allowed unsecured claims for domestic support

---

[3] The facts surrounding the sale of the Colorado Property are detailed in the Motion for Partial Summary Judgment Pursuant to Federal Rule of Bankruptcy Procedure 7056 and Federal Rule of Civil Procedure 56 (the "Motion for Partial Summary Judgment") [Adversary Proceeding Docket No. 202] p. 18, ll. 14-26 and the Declaration of Shelley D. Krohn In Support of the Motion for Partial Summary Judgment Pursuant to Federal Rule of Bankruptcy Procedure 7056 and Federal Rule of Civil Procedure 56 (the "Krohn Declaration In Support of Motion for Partial Summary Judgment") [Adversary Proceeding Docket No. 204] pp. 15-16. The Firm incorporates the Motion for Partial Summary Judgment and the Krohn Declaration In Support of Motion for Partial Summary Judgment by reference.

- 8 -

obligations that, **_as of the date of the filing of the petition in a case under this title_**, are owed to or recoverable by a spouse, former spouse, or child of the debtor, or such child's parent, legal guardian, or responsible relative, without regard to whether the claim is filed by such person or is filed by a governmental unit on behalf of such person, on the condition that funds received under this paragraph by a governmental unit under this title after the date of the filing of the petition shall be applied and distributed in accordance with applicable nonbankruptcy law.

11 U.S.C. § 507(a)(1)(A) (emphasis added).

Section 726(a)(1) provides that property shall be distributed in a Chapter 7 case according to the priorities identified in Section 507. 11 U.S.C. § 726.

Section 101(14A) defines the term "domestic support obligation as a debt that satisfies the following requirements: (1) is owed to or recoverable by a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, responsible relative, or a governmental unit; (2) is in the "nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated; (3) was established or subject to establishment by the applicable provisions of a separation agreement, divorce decree, or property settlement agreement, an order of a court of record, or a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and (4) has not been assigned to a governmental unit. 11 U.S.C. § 101(14A). Whether an obligation is in the nature of support and thus qualifies as a support under bankruptcy law is a question of federal law. *In re Sternberg*, 85 F.3d 1400, 1405 (9th Cir. 1996) *rev'd on other grounds*, *In re Bammer*, 131 F.3d 788 (9th Cir. 1997).

In the instant case, the Proof of Claim is not a domestic support obligation because the first, second, and third elements under Section 101(14A) are not satisfied.

. . .

. . .

1. **The Proof of Claim Is Not Owed To or Recoverable By A Spouse, Former Spouse, or Child of the Debtor**

As set forth above, the only basis for the Proof of Claim is the Settlement Agreement that required Tennille to pay the bankruptcy estate Four Hundred Twenty-Five Thousand Dollars ($425,000) in exchange for a release of the claims for relief for fraudulent transfer. However, Tennille fails to mention that the Four Hundred Twenty-Five Thousand Dollars ($425,000) which was paid to the Trustee was from the sale of the Shore Vista Property that was titled in the name of 13413 Shore Vista Drive, LLC; not Tennille. Accordingly, Tennille did not personally transfer any funds to the Trustee and, as a result, the Proof of Claim does not satisfy the first element for a domestic support obligation.

2. **The Basis for the Proof of Claim Is Not In the "Nature of Alimony, Maintenance, Or Support"**

It is well-established that creditors are entitled to be protected from fraudulent transfers, including transfers between spouses. *In re Beverly*, 374 B.R. 221, 233 (9th Cir. B.A.P. 2007) (reversing the decision of a bankruptcy court that a divorce decree that transferred a million dollars of assets to spouse on the eve of filing for bankruptcy constituted a fraudulent transfer that warranted a judgment in favor of the Chapter 7 Trustee in the amount of one million dollars). Accordingly, transfers before and after dissolution can be avoided as fraudulent transfers by a Chapter 7 Trustee pursuant to Sections 544(b), 548, and N.R.S. Chapter 112. *Id.* Moreover, the majority of jurisdictions that have adopted the Uniform Fraudulent Transfer Act ("UFTA") have held that marital settlement agreements are subject to an attack on the basis of fraudulent transfers. *See Mejia v. Reed*, 31 Cal.4th 657 (2003); *Scholes v. Lehmann*, 56 F.3d 750, 758-759 (7th Cir. 1995); *Kardynalski v. Fisher*, 482 N.E.2d 117, 121-122 (1985); *Dowell v. Dennis*, 998 P.2d 206, 209 (Okla. Ct. App. 2000); *Greeninger v. Cromwell*, 915 P.2d 479, 482 (1996); *Federal Deposit Ins. Co. v. Malin*, 802 F.2d 12 (2d Cir. 1986).

In the instant case, Tennille's assertion of a domestic support obligation is only made in an attempt to prevent the Trustee from effectively administering the Debtor's bankruptcy estate by depriving administrative professionals of payment. Tennille's only argument in support of

- 10 -

her contention that she has a domestic support obligation arises out of the Settlement Agreement that resolved the claims for relief filed by the Trustee in the Shore Vista Adversary Proceeding. Tennille, however, has not explained how the settlement of an adversary proceeding for fraudulent transfer can give rise to a domestic support obligation. Tennille cannot have it both ways. In order to receive the benefit of the Settlement Agreement and the release of claims arising out of the Divorce Decree, Tennille agreed to pay the Trustee Four Hundred Twenty-Five Thousand Dollars ($425,000) from the sale of the Shore Vista Property. It was understood that this settlement amount was going to be used by the Trustee to administer the Debtor's bankruptcy estate including paying administrative professionals and unsecured creditors. The argument that somehow the payment of the Four Hundred Twenty-Five Thousand Dollar ($425,000) settlement amount created a domestic support obligation in favor of Tennille is completely illogical. If the Court adopts the argument in the Limited Opposition, the practical effect of the Settlement Agreement was for Tennille to pay the Trustee Four Hundred Twenty-Five Thousand Dollars ($425,000), which would then be returned to Tennille as a domestic support obligation. Such an agreement would never satisfy the requirements for approval of a compromise under FRBP 9019 because there would not be a discernable benefit to the bankruptcy estate. Moreover, the acceptance of Tennille's argument in the Limited Opposition would render all of the decisions cited above permitting a Chapter 7 Trustee to avoid transfers pursuant to a marital settlement agreement superfluous. This is because in every case, the amount recovered by the Trustee for the benefit of creditors would be returned to the spouse as a domestic support obligation.

  3. <u>The Proof of Claim Was Not Established Or Subject To Establishment By A Separation Agreement or Divorce Decree</u>

As set forth in above, Tennille's argument that she has a domestic support obligation is based entirely on the Settlement Agreement, not a separation agreement or divorce decree. Therefore, the third element required for the establishment of a valid domestic support obligation is not met. Accordingly, the Court should approve the attorneys' fees and costs requested in the Application.

- 11 -

**C.  The Court Should Grant the Fee Application Because There Are Sufficient Bankruptcy Estate Assets Available for Distribution In the Event that the Court Determines that Tennille Holds a Valid Domestic Support Obligation**

As of the filing of this Reply, the Trustee has settled lawsuits thus far totaling approximately One Million Three Hundred Seventy-One Thousand Five Hundred Dollars ($1,371,500).[4]  The Trustee has also filed an application to employ a collection attorney to execute on a Default Judgment that was entered against Erica Vandenyende in the amount of Three Hundred Fifty-Three Thousand Five Hundred Fifteen Dollars ($353,515) in the adversary proceeding entitled *Krohn v. Vandeneynde* (Case Number BK-S-12-01302-LBR).  The Trustee is also in the process of commencing additional adversary proceedings seeking to avoid fraudulent transfers prior to April 23, 2014, including a lawsuit based on assignments obtained from several financial institutions that will have a demand in excess of fifteen million dollars.  As a result, there will be sufficient resources to satisfy the Proof of Claim in the event that it is determined to be a valid domestic support obligation.  The anticipated litigation will also require the payment of professional expenses in order to increase the recovery for unsecured creditors.  Finally, the attorneys' fees and costs requested in the Application are sought on an interim basis, and are subject to disgorgement until final approval from the bankruptcy court in the event that there are insufficient bankruptcy estate assets at the conclusion of the bankruptcy case.  Accordingly, the Court should grant the Firm's attorneys' fees and expenses requested in the Application.

. . .

. . .

. . .

. . .

---

[4] On March 25, 2014, the Court entered an Order Granting the Motion to Approve Compromise that involved a settlement agreement totaling Four Hundred Twenty-Five Thousand Dollars ($425,000) [Main Bankruptcy Docket No. 422].  On June 7, 2013, the Court entered an Order Granting the Motion to Approve Compromise that involved a settlement agreement totaling Six Thousand Five Hundred Dollars ($6,500) [Main Bankruptcy Docket No. 540].  On November 27, 2013, the Court entered an Order Granting the Motion to Approve Compromise that involved a settlement agreement totaling One Hundred Ninety Thousand Dollars ($190,000) [Main Bankruptcy Docket No. 644].  On February 7, 2014, the Court entered an Order Granting the Motion to Approve Compromise that involved a settlement agreement totaling Seven Hundred Fifty-Thousand Dollars ($750,000) [Main Bankruptcy Docket No. 670].

## III. CONCLUSION

For the foregoing reasons, the Firm respectfully requests that this Court enter an Order granting this First Interim Fee Application, and approving and allowing compensation in the amount of $197,037.50 for the Fee Application Period plus reimbursement of expenses in the amount of $2,594.58 for the Fee Application Period.

Dated this 5th day of March, 2014.

NELSON & HOUMAND, P.C.

/s/ Victoria L. Nelson
Victoria L. Nelson, Esq. (NV Bar No. 5436)
Jacob L. Houmand, Esq. (NV Bar No. 12781)
3900 Paradise Road; Suite U
Las Vegas, Nevada 89169-0903
Telephone:   702/720-3370
Facsimile:   702/720-3371

*Attorneys for Shelley D. Krohn, Chapter 7 Trustee*

- 13 -