Matthew L. Johnson (6004)
Russell G. Gubler (10889)
Matthew R. Carlyon (12712)
JOHNSON & GUBLER, P.C.
Lakes Business Park
8831 West Sahara Avenue
Las Vegas, Nevada 89117
Phone: (702) 471-0065
Fax: (702) 471-0075
mjohnson@mjohnsonlaw.com
rgubler@mjohnsonlaw.com

*Attorneys for Creditor*
*Tennille I. Plise*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Case No. 12-14724-lbr |
| WILLIAM WALTER PLISE, AKA BILL PLISE, | Chapter 7 |
| Debtor. | **RESPONSE TO OBJECTION TO PROOF OF CLAIM NUMBER 20 FILED BY TENNILLE I. PLISE PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 3007** |
| | Date of Hearing: July 23, 2014 |
| | Time of Hearing: 9:30 a.m. |
| | Place: Courtroom No. 5, Second Floor Foley Federal Building 300 Las Vegas Blvd., S. Las Vegas, NV 89101 |
| | Judge: Hon. Linda B. Riegle |

Creditor, TENNILLE I. PLISE ("Tennille"), through her attorneys of the law firm of JOHNSON & GUBLER, P.C., respectfully respond to the Trustee's Objection to Proof of Claim Number 20 Filed by Tennille I. Plise Pursuant to Federal Rule of Bankruptcy Procedure 3007 (the "Objection").

////

////

JOHNSON & GUBLER, P.C.
LAKES BUSINESS PARK
8831 WEST SAHARA
LAS VEGAS, NEVADA 89117
(702) 471-0065
(702) 471-0075

This Response is based on the points and authorities below, the records on file, and any other argument entertained by this Court at the time of the hearing.

DATED this ⸺ day of July, 2014.

JOHNSON & GUBLER, P.C.

Matthew L. Johnson (6004)
Russell G. Gubler (10889)
Matthew R. Carlyon (12712)
Lakes Business Park
8831 W. Sahara Avenue
Las Vegas, NV 89117
*Attorneys for Creditor*
*Tennille I. Plise*

## I.    FACTS

### A.    MARRIAGE AND DIVORCE

Debtor and Tennille Plise were married on December 4, 2001. Initially, Debtor and Tennille were happy in their marriage and had 2 children together. However, as time continued, Tennille found herself raising the children by herself, while Debtor spent much of his time with work.  There were other significant marital problems, and Tennille was unable to overcome those problems.

In September 2008, Tennille and Debtor filed a Joint Petition for Divorce ("Joint Petition") . In October 2008, Tennille and Debtor were required to complete a seminar regarding their children, and helping them to cope with the divorce.  Although the Debtor had the benefit of counsel, Tennille did not. The Joint Petition for Divorce included matters related to the dissolution of the actual marriage, alimony, child custody, and child support. Pursuant to the Joint Petition, Debtor was to pay Tennille a one-time lump sum payment of child support in the amount of $1,850,000, and $1,000,000 in alimony.[1] *See* Dkt. 731, Exhibit "1", Divorce

---

[1]In addition, Debtor was to assume all of Tennille's debt in the Joint Petition. However, Tennille had no debt at the time of the Joint Petition.

- 2 -

JOHNSON & GUBLER, P.C.
LAKES BUSINESS PARK
8831 WEST SAHARA
LAS VEGAS, NEVADA 89117
(702) 471-0065
(702) 471-0075

1   Decree. At the time, although Tennille did not know it, the Debtor's net worth was estimated to

2   be in excess of $120,000,000.00.

3          In addition to the alimony and child support (which, based on the Debtor's net worth

4   was unquestionably low), Tennille was to receive various personal property.  Tennille did not

5   know all of Debtor's assets at the time of the divorce. However, Tennille knew that Debtor's

6   assets were substantial. As part of the divorce, Tennille asked for a number that she believed

7   would allow her and the children to live comfortably.  Tennille's main concern was to get

8   permission to move and to have primary custody of the children. Had Tennille been represented

9   by counsel, based on the Debtor's income and the Debtor's and Tennille's assets, Tennille

10  unquestionably would have received substantially more - most likely in excess of

11  $50,000,000.00. Ultimately, the Debtor consented to Tennille having primary custody of the

12  children, and the divorce was finalized. On October 24, 2008, the Nevada District Court,

13  Family Division, of Clark County entered a valid, final Decree of Divorce (*See* Dkt. 731,

14  Exhibit "1", Divorce Decree) between the Debtor and Tennille (the "Divorce").

15  **B.    COLORADO PROPERTY**

16         Pursuant to the Divorce Decree, Tennille received from the Debtor $2.2 Million to date,

17  some of which has been given back due to settlements. However, instead of the full $1 Million

18  for Alimony, on or about October 29, 2008, Tennille agreed to receive $350,000; a parcel of

19  vacant land in Colorado, located at 8515 Hinsdale County Road, Hinsdale, Colorado

20  ("Colorado Property"); a note for Cracked Egg; and Bank of George Stock, which lost its value.

21  The Colorado Property is located in a small town, where the townspeople are very close.

22  Tennille desired the Colorado Property for her sons. As a result, on or about October 27, 2008,

23  after the Divorce was entered, the Colorado Property was transferred to Tennille. On or before

24  September 19, 2012, county workers began working on the road near the Colorado Property.

25  Because of the closeness of the townspeople, Tennille was asked whether the county trucks

26  could be parked on the Colorado Property. Tennille consented. However, Tennille transferred

27  the Colorado Property into Old Toll, which is wholly owned by Tennille, to protect herself from

28

- 3 -

JOHNSON & GUBLER, P.C.
LAKES BUSINESS PARK
8831 WEST SAHARA
LAS VEGAS, NEVADA 89117
(702) 471-0065
(702) 471-0075

1  liability. There was no intent to defraud anybody. Tennille had owned the property for four

2  years by that time.

3        As set forth above, at the time of the Divorce, Debtor had substantial assets. A financial

4  statement, dated March 31, 2008, which was prepared using generally accepted accounting

5  principals by certified public accountants, shows that the Debtor had a net worth of

6  approximately $127,561,900.00 just prior to the Divorce. *See* Dkt. 47, 12-01214-lbr. Similarly,

7  on April 17, 2008, an appraisal of the City Crossing project, which Debtor owned through

8  various entities, shows that the value of the property on the project, "As Is" was $241,990,000.

9  Based on the appraisal and the serviced debt encumbering City Crossing, Debtor's interest in

10  the City Crossing project had a $70,000,000 equity cushion at the time of the Divorce. *Id.*

11        Similarly, through an entity, the Debtor owned a 100% interest in a project located at

12  5550 Painted Mirage Road, Las Vegas, NV 89149 (the "CCC Project"). The property at the

13  CCC Project appraised at approximately $48 Million, which was financed through a loan from

14  U.S. Bank, totaling $35 Million.  The CCC Project had approximately a $13 Million equity

15  cushion as of September 2008.  In addition, through an entity, Debtor also owned 65% of a

16  project located at 6325 S. Rainbow Blvd., Las Vegas, NV 89113 (the "Rainbow Project"). The

17  property at the Rainbow Project was valued at approximately $40 Million, which was financed

18  through a loan from U.S. Bank, totaling $28 Million. Considering Debtor's ownership, the

19  Rainbow Project held approximately an $8 Million equity cushion as of September 2008. *Id.*

20        Debtor was not left without funds as a result of the Divorce. After the Divorce and

21  transfers to Tennille, Debtor paid off a loan to Bank of George in the amount of $1,095,000,

22  and another loan in the amount of $688,926.  Further, after the Divorce and transfers to

23  Tennille, Debtor loaned monies to other parties. In December of 2008, Debtor loaned Angela

24  Kersten approximately $160,000. From 2009 through 2010, Debtor loaned N.W. Landscape and

25  Michael Ault approximately $500,000.  Upon information and belief, Michael Ault also filed

26  bankruptcy. From 2008 to 2009, Debtor loaned Dennis Norland approximately $600,000. In

27  2009, Debtor loaned Roger Hocking approximately $250,000. From 2008 to 2011, Debtor

28

- 4 -

JOHNSON & GUBLER, P.C.
LAKES BUSINESS PARK
8831 WEST SAHARA
LAS VEGAS, NEVADA 89117
(702) 471-0065
(702) 471-0075

loaned Mike Field and/or Talon Electric approximately $2,000,000. *Id.* Further, Debtor also loaned $5 Million to Mitchell Stipp and Christina Caldrone Stipp.

### C.    TEXAS PROPERTY

Soon after the Divorce, Tennille desired to move to another location, which would allow her a new start in life. In January 2009, a month after the divorce was final, Tennille purchased a home located at 13413 Shore Vista Drive, Austin, Texas (the "Austin Property") using the funds that she received pursuant to the divorce decree.  However, after purchasing the Austin Property, Tennille experienced vertigo, nausea, and hearing loss over approximately a 2-3 year period. During the 2-3 year period, Tennille had over a dozen blood tests. Tennille was informed by her physician that she has Meniere's Disease. During dizzy spells, Tennille did not drive, and was driven to places by others.

Because Tennille did not work outside of the home, Tennille needed to borrow money from others to pay for her medical bills, living expenses, and attorney fees. Ultimately, Tennille needed to repay those loans. As a result, Tennille decided to sell the Austin Property, and for a period of time, Tennille put the Austin Property up for sale. Because Tennille was unable to readily sell the Austin Property, Tennille contacted Debtor to discuss whether or not he knew anyone that would give Tennille a loan. Because Tennille did not work outside the home, Debtor recommended that Tennille contact Mike Halverson to help Tennille obtain a loan. Mike Halverson assisted Tennille in obtaining a loan. However, the lender required that Tennille transfer the Austin Property out of her name to avoid any issues concerning homestead laws in Texas. Upon information and belief, the lender believed that even though a lender may have a deed of trust or other interest in property, the homestead laws in Texas still made foreclosure more difficult for the lender.

To obtain the loan, Tennille sold the Austin Property to 13413 Shore Vista Drive, LLC ("SVD"), which was managed by Mike Halverson, for approximately $2,000,000. Mike Halverson is a friend of the Debtor.  The Debtor arranged for this transaction after Tennille discussed with him her need to obtain funds. SVD obtained a loan in the amount of approximately $850,000-$900,000, which was given to Tennille as the seller. The lender

JOHNSON & GUBLER, P.C.
LAKES BUSINESS PARK
8831 WEST SAHARA
LAS VEGAS, NEVADA 89117
(702) 471-0065
(702) 471-0075

received a deed of trust in the Austin Property for the amount of the loan. In addition, Tennille received a deed of trust in the Austin Property for another $1.1 Million, which was the equity left in the Austin Property.  With the funds received, Tennille paid for the loan costs and the interest. In addition, Tennille prepaid for 12 months of rent.  SVD sold the Austin Property in approximately March or April of 2013.

After purchasing the Austin Property, two creditors of the Debtor, Bank of George[2] and Eliot A. Alper[3] sued Tennille, alleging that the Debtor and Tennille's divorce was a sham, and seeking to recover properties which were transferred pursuant to the Divorce. Discovery was conducted in both matters. The action by Alper was dismissed because the court found that the property transferred had related to the Divorce. Similarly, Tennille settled with the Bank of George for stock and for the amount that Tennille believed it would cost her to attend trial. Upon information and belief, Bank of George decided to settle after the court, in the matter between Bank of George and Debtor, found that Bank of George's request to unwind the transfers pursuant to a divorce decree was improper pursuant to NRS 125.185.[4]

**D.    SETTLEMENT WITH US TRUSTEE**

After the Debtor filed his bankruptcy petition, the Trustee sued Tennille, pursuant to 11 U.S.C. §544, 550, alleging that the divorce was a sham divorce intended to defraud creditors. Tennille vigorously defended that litigation, and ultimately, after a settlement conference, the parties reached a settlement in which the Debtor's estate would receive the settlement payment from Tennille's second deed of trust that she held on the Austin property, once it sold. The

---

[2]Bank of George brought an action against Debtor in the Eighth Judicial District Court of Nevada, Case No. 08A577157, seeking to obtain funds transferred pursuant to the Divorce. In a similar matter, Bank of George brought an action against Tennille Plise in the Eighth Judicial District Court of Nevada, Case No. 09A584256 for Fraudulent Transfers and Conveyances Act NRS 112.140 et. Seq.; Preliminary Injunction; and Declaratory Relief.

[3]Eliot A. Alper, Trustee of the Eliot A. Alper Revocable Trust dated March 22, 1999; Spacefinders Realty, Inc., and The Alper Limited Partnership brought an action against Tennille Plise in the Eighth Judicial District Court of Nevada, Case No. A-09-591861-C, seeking to obtain funds transferred pursuant to the Divorce.

[4]Upon information and belief, the Order was entered on November 12, 2010.

JOHNSON & GUBLER, P.C.
LAKES BUSINESS PARK
8831 WEST SAHARA
LAS VEGAS, NEVADA 89117
(702) 471-0065
(702) 471-0075

parties signed a written settlement agreement.  The trustee filed a motion to approve the

settlement, and this Court entered an Order Granting Motion to Approve the Settlement

Agreement Pursuant to Federal Rule of Bankruptcy Procedure 9019 (Dkt. No 190 (12-01214-

lbr)).  In the approved settlement agreement, the Trustee released Tennille from all claims.

Tennille, however, did not waive her right to child support or alimony awarded in the Family

Court matter.  To the contrary, Tennille specifically reserved her rights to any claim not waived

or released. The settlement agreement approved by this Court states in relevant part, that

Tennille is released:

> from all claims arising out of the transfer of any and all real and/or
> personal property related to the Divorce Decree, including the
> transfer of the Colorado Property, the assignment of the Debtor's
> interest in the promissory note dated February 6, 2009 from the
> Cracked Egg, LLC in the amount of seven hundred thousand dollars
> ($700,000.00), the payment of any income taxes owed to the Internal
> Revenue Service and the transfer of common stock in the Bank of
> George.  Furthermore, the Trustee releases Shore Vista of any and
> all claims relating to the transfer of the Austin Property.(*Id.*)

The Trustee also agreed to voluntarily dismiss the claims for relief in the Second

Amended Complaint against Old Toll and the Colorado Property, and Koba Investments (*Id.*)

The monies which were paid to the Trustee came from Tennille Plise. The first and

second deeds of trust totaled over $2 million, which was more than the sale proceeds of the

house. Without Tennille's release of the second trust deed, there would have been no proceeds

to pay the Trustee.

**E.    THE FIRST INTERIM APPLICATION**

On February 9, 2014, the law firm of Nelson & Houmand, P.C. ("Counsel to Shelley D.

Krohn, Trustee")  filed its First Interim Application for Attorney's Fees and Costs in the

amount of $197,037.50 in fees and $2,594.58 in expenses for a total of $199,632.08.  Tennille

objected to the payment of this claim, as she still had a priority claim for alimony and child

support which has not been paid. The Court granted the Application for Attorney's Fees and

Costs. However, the Court also ordered that all interim fees and expenses paid to professionals

are subject to disgorgement based on Tennille's objection.. The Court also ordered that it had

JOHNSON & GUBLER, P.C.
LAKES BUSINESS PARK
8831 WEST SAHARA
LAS VEGAS, NEVADA 89117
(702) 471-0065
(702) 471-0075

1   not made a determination as to the Proof of Claim filed by Tennille Plise on July 24, 2013. *See*

2   Dkt. 687.

3   **II.    LEGAL ARGUMENT**

4

5       **A.    *The Court must allow Tennille's priority Proof of Claim. Tennille's Proof of Claim is a pre-petition debt, pursuant to the Bankruptcy Code.***

6

7           1.    Tennille's proof of claim has priority over administrative claims.

8   Tennille has a claim for a domestic support obligation arising from the Divorce Decree

9   which has not been fully satisfied.  Tennille is entitled to a priority claim, over the Trustee's

10  administrative claims.

11      11 USC §507(a) states:

12

13      The following expenses and claims have priority in the following order:

14

15      (1) First:

16

17      (A) Allowed unsecured claims for domestic support obligations that, as of the date of the filing of the petition in a case under this title, are owed to or recoverable by a spouse, former spouse, or child of the debtor, or such child's parent, legal guardian, or responsible relative, without regard to whether the claim is filed by such person or is filed by a governmental unit on behalf of such person, on the condition that funds received under this paragraph by a governmental unit under this title after the date of the filing of the petition shall be applied and distributed in accordance with applicable nonbankruptcy law

18

19

20

21      . . .

22

23      (C) If a trustee is appointed or elected under section 701, 702, 703, 1104, 1202, or 1302, the administrative expenses of the trustee allowed under paragraphs (1)(A), (2), and (6) of section 503 (b) shall be paid before payment of claims under subparagraphs (A) and (B), to the extent that the trustee administers assets that are otherwise available for the payment of such claims.

24

25

26      Thus, the administrative expenses of the Trustee shall only be paid before payments of

27  domestic support obligations to the extent that the trustee administers assets that are otherwise

28  available for the payment of such claims.  The phrase "to the extent that the trustee

JOHNSON & GUBLER, P.C.
LAKES BUSINESS PARK
8831 WEST SAHARA
LAS VEGAS, NEVADA 89117
(702) 471-0065
(702) 471-0075

administers assets that are otherwise available for the payment of such claims" indicates that the Trustee is entitled to priority payments above domestic support obligations only from non-exempt property of the estate. *In re Connie Rae Murray,* 2013 WL 1795676 (Bkrtcy.D.Kan.)

In Nevada, NRS 21.090 controls what property is exempt from execution, and includes,

> (s) All money and other benefits paid pursuant to the order of a court of competent jurisdiction for the support, education and maintenance of a child, whether collected by the judgment debtor or the State.

> (t) All money and other benefits paid pursuant to the order of a court of competent jurisdiction for the support and maintenance of a former spouse, including the amount of any arrearages in the payment of such support and maintenance to which the former spouse may be entitled.

Thus, as the payments of $1,850,000 and $1,000,000 in child support and alimony, respectively, are exempt from execution under NRS 21.090 (s) and (t). They are not assets available for payment of administrative claims of the U.S. Trustee, and any payment of such administrative claims must not be allowed until such time as Tennille has been paid her priority claim under 11 USC §507(a)(1)(A).

### 2.    Tennille's proof of claim is for a pre-petition debt.

The Trustee wrongly argues that the child support and alimony did not mature until after the bankruptcy was filed and after Tennille entered into a settlement with the Trustee. However, the Debtor's obligations to Tennille were created under the Divorce Decree. The Divorce Decree was entered on October 24, 2008, by the Nevada District Court, Family Division, of Clark County, requiring the very payment that Tennille now partially seeks. Therefore, the amounts claimed are not unmatured under 11 U.S.C. §502(b)(5).

Further, the Divorce Decree required a one-time lump sum payment of child support in the amount of $1,850,000, and $1,000,000 in alimony. The Debtor paid Tennille. However, after the bankruptcy was filed, the Trustee sought avoidance of these amounts under 11 U.S.C. §§544 and 550. The parties entered into the Settlement Agreement, and Tennille paid a settlement into the Bankruptcy Estate. As a result, Tennille is owed money by the Debtor,

JOHNSON & GUBLER, P.C.
LAKES BUSINESS PARK
8831 WEST SAHARA
LAS VEGAS, NEVADA 89117
(702) 471-0065
(702) 471-0075

constituting alimony and child support under the Divorce Decree, entered into on October 24, 2008. These payments must be paid, prior to any other creditor.

Moreover, the amount owed to Tennille for pre-petition debt is no different than any other creditor who has money avoided by a trustee because of a preference. Tennille agrees with the Trustee that Section 502 governs the proofs of claims. However, pursuant to 11 U.S.C. §502(h), the Bankruptcy Code states,

> A claim arising from the recovery of property under section 522, 550, or 553 of this title shall be determined, and shall be allowed under section (a), (b), or (c) of this section, or disallowed under subsection (d) or (e)[5] of this section, the same *as if such claim had arisen before the date of the filing of the petition*.

11 U.S.C. §502(h) (emphasis added). Similarly, "[Section] 502(h) allows claims arising from recovery of property by the trustee under § 550 the *same as if the claim had arisen before the filing date of the bankruptcy petition*." *In re Laizure*, 548 F.3d 693, 696 (9th Cir. 2008) (emphasis added).

Section 522 provides for exemptions that are allowed in Bankruptcy. These exemptions may include state or local law exemptions. *See* 11 U.S.C. §522(f)(3)(B). NRS 21.090(1)(s), (t) provides that support for a child or former spouse are exempt.

Section 550 covers liabilities of transferees of avoided transfers pursuant to sections 544, 545, 547, 548, 549, 553, or 724. *See* 11 U.S.C. §550(a).

"[T]he import of Section 502(h) is that where a claim is allowable as provided in that section, its *status is as a claim in existence on the date of the filing of the petition* regardless of when, after the petition, the trustee has taken the necessary action and recovered." *In re Laizure*, 548 F.3d at 696 (citation omitted) (emphasis added). "[T]he natural import of [§502(h)'s] language – especially the words 'shall be determined, and shall be allowed . . . the same as if such claim had arisen before the date of the filing of the petition – is that *the 502(h)*

JOHNSON & GUBLER, P.C.
LAKES BUSINESS PARK
8831 WEST SAHARA
LAS VEGAS, NEVADA 89117
(702) 471-0065
(702) 471-0075

---

[5]Subsections (e) and (f) of Section 502 are not applicable. Subsection (d) only applies if Tennille had not make a payment to the Trustee. The Trustee admits that the payment has been made. Subsection (e) only would apply if a claim was for reimbursement or contribution. The claim is for alimony and child support.

*claim takes on the characteristics of the original claim . . . ." Id.* (emphasis in original) (*citing with approval Fleet Nat'l Bank v. Gray (In re Bankvest Capital Corp.*), 375 F.3d 51 (1st Cir. 2004). Thus, 11 U.S.C. §502(h) makes it very clear that Tennille's claim is treated as if the claim had arisen *before* the filing of the petition.

On September 19, 2012, after Tennille had received payments pursuant to the Divorce Decree, the Trustee filed a complaint against Tennille alleging claims for relief for, among other things, (1) avoidance of fraudulent transfers pursuant to 11 U.S.C. §544(b); and (2) recovery of fraudulent transfers pursuant to 11 U.S.C. §550, for payments that Tennille received for child support and alimony. Dkt. Nos. 23, 190 (12-01214-lbr). Thereafter, Tennille paid to settle the lawsuit with the Trustee. Dkt. 190 (12-01214-lbr), Exhibit "1", Settlement Agreement, , ¶1(f). The Trustee released Tennille from all claims arising out of the transfer of any and all real and/or personal property related to the Divorce Decree. Dkt. 190 (12-01214-lbr), Exhibit "1", Settlement Agreement, ¶2. Tennille did not waive her rights to file a proof of claim for alimony or child support. Rather, Tennille reserved all of her rights to the claim in the Settlement Agreement:

> Reservation of Rights. Notwithstanding anything tot he contrary contained in this Agreement, the Parties hereto *expressly reserve unto themselves any claims or causes of action, whether at law or in equity, arising out of the non-performance of this Agreement by a Party.* The Parties agree that if any Party hereto employs counsel or brings suit to enforce the terms or conditions of this Agreement, and if such Party is successful in such effort, he or it (as the case may be) shall be entitled to recover from the non-performing Party any and all damages, costs, expenses and attorneys' fees incurred as a result thereof.

Dkt. 190 (12-01214-lbr), Exhibit "1", Settlement Agreement, ¶6 (emphasis added).

Further, no other agreements were made. The settlement agreement states:

> Entire Agreement. This Agreement constitutes the entire agreement of the Parties and supersedes all prior agreements, statements and representations with respect to the matters resolved herein.

Dkt. 190 (12-01214-lbr), Exhibit "1", Settlement Agreement, ¶7. There is no language anywhere in the Settlement Agreement where Tennille waives anything at all. The Trustee releases her and other parties, but Tennille does not release any claims at all against the estate.

JOHNSON & GUBLER, P.C.
LAKES BUSINESS PARK
8831 WEST SAHARA
LAS VEGAS, NEVADA 89117
(702) 471-0065
(702) 471-0075

- 11 -

By avoiding the payment of the alimony and child support, the Trustee put Tennille in a position where she was still not fully paid. Under §502(h), Tennille is therefore returned to the same position she was in before Debtor made the payment, which the Trustee has claimed under sections 544 and 550.[6] Without recourse through §502(h), Tennille would never recoup the alimony and child support, to which she is entitled. *See In re Laizure*, 548 F.3d at 697-98. As a result, the Court has allowed for a disgorgement of the alimony and child support from the monies already paid to the Trustee. Dkt. 687, Order.

Alternatively, Tennille Plise was a creditor at the time of the Petition. Tennille is the mother of the Debtor's children, is the former spouse of the Debtor, and as such, Debtor owes a continuing obligation to his children and former spouse.

**B.    *The Proof of Claim must be allowed, as it derives from a valid domestic support obligation.***

As provided above, Tennille is entitled to a priority claim, over the Trustee's administrative claims, pursuant to 11 U.S.C. §507.

Further, the Trustee argues that the Proof of Claim does not constitute a "domestic support obligation" pursuant to 11 U.S.C. §101(14A). However, this is false. Tennille does meet all of the elements of Section 101 (14A).[7]

1.    The Proof of Claim represents debts owed to or recoverable by a former spouse and child.

The Trustee argues that Tennille's proof of claim arises from the settlement with the Trustee. Although it is true that Tennille did not believe that she had reason to file a proof of

---

[6]The Trustee raises a red herring concerning a loan that was given to Debtor after the Colorado Property was sold. After the Colorado Property was sold, Tennille loaned Debtor monies. A portion of these monies have been paid back by the Debtor. Nevertheless, whether Tennille gave money to the Debtor after the Colorado Property was sold is irrelevant to the issue at hand. What is relevant is that Tennille has a valid, first-priority claim that existed pre-petition pursuant to 11 U.S.C. §502(h).

[7]The Trustee concedes that Tennille has met the fourth element under Section 101(14A). As a result, the fourth element will not be discussed.

JOHNSON & GUBLER, P.C.
LAKES BUSINESS PARK
8831 WEST SAHARA
LAS VEGAS, NEVADA 89117
(702) 471-0065
(702) 471-0075

claim until the settlement with the Trustee, the original obligation arose at the time that the Divorce Decree was entered. The Divorce Decree was entered pre-petition and the marital obligations were entered pre-petition and are valid claims.

Further, as explained above, Section 502(h) specifically provides that the claim is treated as though it arose pre-petition if a trustee avoids a transfer pursuant to sections 544 or 550. In this case, the Trustee specifically sued Tennille pursuant to sections 544 and 550. Therefore, the obligation arose pre-petition.

Moreover, the Trustee argues that Tennille fails to mention that the settlement was paid from the sale of the Austin Property that was titled in the name of 1313 Short Vista Drive, LLC. However, not only is this false, this is irrelevant where the money came from. Nevertheless, the Trustee sued Tennille for a fraudulent transfer under sections 544 and 550, as a result of the monies received for alimony and child support. Dkt. 190 (12-01214-lbr), Exhibit "1", Settlement Agreement. Further, the monies paid to the Trustee in the settlement still belonged to Tennille. Tennille held a second priority deed of trust on the Austin Property. Dkt. 190 (12-01214-lbr), Exhibit "1", Settlement Agreement. The monies to the Trustee came only after the first deed of trust was paid. *Id.* In fact, Tennille owned the second deed of trust on the Austin Property and paid the estate with monies that she would have received from the sale. Any monies remaining after the first and second deeds of trust were paid were transferred to Tennille.   Dkt. 190 (12-01214-lbr), Exhibit "1", Settlement Agreement, ¶¶1(e), (f). The first and second deeds of trust totaled over $2 million, which was more than the sale proceeds of the house. Without Tennille's release of the second trust deed, there would have been no proceeds to pay the Trustee. Thus, the first element has been met.

<u>2.    The Proof of Claim is in the nature of the alimony and child support.</u>

The Trustee argues that the proof of claim is not in the ***nature*** of alimony or support by arguing that creditors are allowed to be protected by fraudulent transfers. However, this argument is nonsensical. Whether or not Nevada law allows the Trustee to attack the Divorce Decree, which Tennille submits that it does not, the proof of claim is directly tied to alimony and support of the Debtor's children.

JOHNSON & GUBLER, P.C.
LAKES BUSINESS PARK
8831 WEST SAHARA
LAS VEGAS, NEVADA 89117
(702) 471-0065
(702) 471-0075

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOHNSON & GUBLER, P.C.
LAKES BUSINESS PARK
8831 WEST SAHARA
LAS VEGAS, NEVADA 89117
(702) 471-0065
(702) 471-0075

Of course the proof of claim is in the form of alimony and child support. Tennille received monies based on a divorce decree. The Trustee sued Tennille based on the transfer pursuant to the divorce decree. Tennille turned over funds that she received pursuant to the Divorce Decree. Now, Tennille has filed her proof of claim because she is still owed monies under the Divorce Decree entered pre-petition.

The Trustee cites *In re Beverly*, 374 B.R. 221 (9th Cir. BAP 2007), for the proposition that it "is well-established that creditors are entitled to be protected from fraudulent transfers ..

- 14 -

. between spouses."[8] However, *In re Beverly* is based on California law, not Nevada law. *Id* at 233.

Pursuant to NRS Chapter 112, Nevada law specifically prohibits third parties from collaterally attacking a decree obtained in the state of Nevada.

NRS 125.185 provides:

---

[8] The Trustee states that the Divorce Decree is subject to an attack on the basis of fraudulent transfers. Thus, the Trustee is seeking to re-litigate the terms of the Divorce Decree/ However, federal courts do not have jurisdiction over such issues. The federal courts have disclaimed any jurisdiction "upon the subject of divorce or for the allowance of alimony". *Barber v. Barber*, 62 U.S. 582, 583 (1858); *Ankenbrandt v. Richards*, 504 U.S. 689, 702, 703 (1992). Only the state court can grant a divorce decree. *In re Cole*, 202 B.R. at 361. "Property interests are created and defined by state law." *In re Lowenschuss*, 170 F.3d 923, 929 (9th Cir. 1999); *Butner v. United States*, 440 U.S. 48, 55 (1979). Similarly, federal courts have no jurisdiction of suits to establish child custody or support. *Ankenbrandt v. Richards*, 504 U.S. at 702, 703; *Buechold v. Ortiz*, 401 F.2d 371, 372 (9th Cir. 1968). In addition, a "review of child support orders is beyond the scope of jurisdiction of a federal court." *Fockaert v. County of Humboldt*, 1999 WL 30537, *5 (N.D.Cal. Jan. 15, 1999) (*citing Branson v. Nott*, 62 F.3d 287, 291 (9th Cir. 1995) *cert. denied*, 516 U.S. 1009 (1995)). Thus, federal courts lack jurisdiction to issue divorce, alimony, or child-custody decrees. *Ankenbrandt v. Richards*, 504 U.S. at 693-95. As a result, "[i]t is appropriate for bankruptcy courts to avoid invasions into family law matters 'out of consideration of court economy, judicial restraint, and deference to our state court brethren and their established expertise in such matters.'" *In re MacDonald*, 755 F.2d 715, 717 (9th Cir. 1985); *see also In re White*, 851 F.2d 170 (1988) (finding that bankruptcy court "properly deferred to the divorce court's greater expertise on the question of what property belongs to whom").
The Ninth Circuit has explained:
There are many criteria to be considered in child support cases, such as the standard of living, employment and wages of the father, most of which are intimate to the parties and dependent upon the particular conditions existing in the area where the parties reside. State courts deal with these problems daily and have developed an expertise that should discourage the intervention of federal courts. As a matter of policy and comity, these local problems should be decided in state courts. Domestic relations is a field peculiarly suited to state regulation and control, and peculiarly unsuited to control by federal courts.
*Buechold v. Ortiz*, 401 F.2d 371, 373 (9th Cir. 1968); *see also Ankenbrandt v. Richards*, 504 U.S. at 703-04. Thus, to the extent necessary, Tennille submits that the Court does not have jurisdiction to re-litigate the terms of the Divorce Decree.
Further, the Trustee does not have standing to modify or challenge child support or alimony under the Divorce. Such challenges are specifically authorized by NRS 125B.145 and may only be brought by the parents, certain state agencies, or the district attorney. NRS 125B.145(1), (2). Since the Trustee is none of these, the Trustee does not have standing to make such arguments.

JOHNSON & GUBLER, P.C.
LAKES BUSINESS PARK
8831 WEST SAHARA
LAS VEGAS, NEVADA 89117
(702) 471-0065
(702) 471-0075

JOHNSON & GUBLER, P.C.
LAKES BUSINESS PARK
8831 WEST SAHARA
LAS VEGAS, NEVADA 89117
(702) 471-0065
(702) 471-0075

No divorce from the bonds of matrimony heretofore or hereafter granted by a court of competent jurisdiction of the State of Nevada, which divorce is valid and binding upon each of the parties thereto, may be contested or attacked by third persons not parties thereto.

NRS 125.185 (emphasis added).

No Nevada court has limited, created exceptions to, or otherwise interpreted this statute. However, it appears upon review of other case law interpreting this statute, every Court interpreting this statute has upheld it and therefore has refused to allow a non-party to a divorce to collaterally attack that divorce.

In *In re Marriage of Winegard*, the Iowa Supreme Court affirmed the trial court's ruling that a Nevada divorce decree was not subject to attack by a third party to that decree. One of the issues in *Winegard* was whether one of Mrs. Winegard's previous marriages had been properly dissolved. Mr. Winegard attempted to argue that because the state of Nevada had lacked jurisdiction over Mrs. Winegard's previous divorce, the divorce was therefore invalid. In ruling that Mr. Winegard could not argue that the Nevada divorce was invalid, the Iowa Supreme Court stated:

> Nevada has statutorily limited collateral attacks on Nevada divorces by third parties in Nev. Rev. Stat. § 125.185 . . . Due to the fact that both parties to [Ms. Winegard's] first divorce are bound by said decree, [the ex-husband having appeared by counsel at the proceedings, *§ 125.185 of the Nevada statutes would bar a Nevada attack by [Mr. Winegard] upon the divorce decree*, and operation of the Full Faith and Credit Clause would produce a like effect in this state. To permit collateral attack in Iowa *which could not be undertaken in the state where the judgment was rendered* would be to deny the unified nature of our federal system as well as being in contravention of traditional notions of res judicata.

*In re Marriage of Winegard*, 278 N.W.2d 505, 508 (Iowa 1979) (emphasis added).

The highest court in the state of Maryland similarly refused such a collateral attack.

> Since Nevada, by statute, prohibits all third-party attacks on Nevada divorce decrees that are binding on the parties to the divorce action, Nev. Rev. Stat. tit. 11, ch. 125, § 125.185 (1967), appellant may not collaterally attack such a decree in Maryland.

*Madden v. Cosden*, 271 Md. 118, 125, 314 A.2d 128, 131 (1974) (emphasis added).

One New York Court ruled almost identically, finding:

> [I]n view of the fact that the Nevada Law (Nevada Rev. Stat., tit. 11, §
> 125.185) prohibits the plaintiff herein from collaterally attacking the Nevada
> divorce decree of the defendant in Nevada, plaintiff cannot collaterally
> attack said decree in New York.

*Gutowsky v. Gutowsky*, 38 Misc. 2d 827, 829 (N.Y. Sup. Ct. 1963).

Thus, the Trustee is clearly attempting to attack the divorce decree between Tennille and the Debtor. The Trustee was never a party to the Divorce. As a result, the Trustee is unable to collaterally attack the Divorce.

Further, Paragraph 13 alleges that the divorce decree was entered by the Nevada District Court Family Division, of Clark County on October 24, 2008. This allegation, admitted by the Trustee, puts the divorce decree squarely within the protection of NRS 125.185, which protects divorces "granted by a court of competent jurisdiction of the State of Nevada." As a result of NRS 125.185, Tennille's proof of claim must be allowed and the objection of the Trustee overruled.

Similarly, NRS 125.181 clearly states that as a prerequisite to obtaining a summary divorce (as was the case with the Divorce), certain things must occur, including the following:

> 3.  There are no minor children of the relationship of the parties born before
> or during the marriage or adopted by the parties during the marriage and the
> wife, to her knowledge, is not pregnant, or ***the parties have executed an
> agreement as to the custody of any children and setting forth the amount
> and manner of their support***.

> 4. There is no community or joint property or the parties ***have executed an
> agreement setting forth the division of community property and the
> assumption of liabilities of the community, if any, and have executed any
> deeds, certificates of title, bills of sale or other evidence of transfer necessary
> to effectuate the agreement.***

> 5. The parties waive any rights to spousal support ***or the parties have executed
> an agreement setting forth the amount and manner of spousal support.***

NRS 125.181 (emphasis added). Thus, any alimony, child support, or child custody issues are also subject to the Divorce and cannot be overturned pursuant to NRS Chapter 112.

JOHNSON & GUBLER, P.C.
LAKES BUSINESS PARK
8831 WEST SAHARA
LAS VEGAS, NEVADA 89117
(702) 471-0065
(702) 471-0075

The Trustee further argues that Tennille's assertion of a domestic support obligation is only made in an attempt to prevent the Trustee from administering the estate by depriving administrative professionals of payment. Again, this is a nonsensical argument. Even if Tennille had a personal vendetta to stop the Trustee from administering the estate (which Tennille submits that she does not) – for some unknown reason  – what does that have anything to do with whether the proof of claim is in the nature of alimony, maintenance, or support?  The answer: it doesn't. On the contrary, the Trustee appears to only be attempting to prevent the support of Debtor's former spouse and underage children.

The Trustee tries to misconstrue the facts to state that Tennille's claim arises out of a settlement with the trustee. However, for the reasons above, and the reasons provided in Section 502(h), the proof of claim arises, pre-petition, from the Divorce Decree.

The Trustee also argues that Tennille cannot settle with the Trustee and then file a proof of claim. The Trustee argues that "[i]t was understood that this settlement amount was going to be used by the Trustee to administer the Debtor's bankruptcy estate".  However, this was never the agreement in the Settlement Agreement. The Settlement Agreement, as provided above, specifically states that Tennille retains all of her rights. In addition, the Settlement Agreement specifically states that no other agreements were contemplated, except for those specifically stated in the Settlement Agreement. The Settlement Agreement clearly and unambiguously does not release any claims of Tennille. This very argument was used. Thus, parole evidence is excluded from the Trustee. Further, in her Opposition to Motion for Preliminary Injunction Freezing Certain Assets, and Countermotion to Dismiss Claims Against Tennille I. Plise and Old Toll Road, LLC, on file herein, Tennille specifically argued:

> The Court is unable to provide redress. Based on Section 507, ***even if the Court finds that the Debtor fraudulently transferred all of the property that the Trustee seeks, the fact remains that Tennille has a valid, final, non-appealable domestic relations order.  The ultimate result is that the Trustee would still have to first pay the monies due and owing under a super-priority, valid, unappealable Divorce decree, before first taking a fee and paying any funds for any administrative expenses.***

Further, as provided above, this situation is no different than any other avoidance, which is then allowed in a proof of claim under 11 U.S.C. 502(f). Moreover, the Court specifically previously ruled that the administrative fees could be disgorged from the Trustee. Thus, it was specifically contemplated, contrary to the Trustee's argument. As a result, Claim 20 must be allowed.

Moreover, Tennille could not have modified the settlement, related to child custody, in the agreement with the Trustee. Parties cannot modify a court order granting child support unless approved by a court of proper jurisdiction. NRS 125B.145(2); *see also Jackson v. Jackson*, 111 Nev. 1551, 1551, 907 P.2d 990, 991 (1995) (finding that state district court had jurisdiction to modify the child support award).

The settlement agreement was made in bankruptcy court. To modify any support for a child, the action would have had to been brought in a Nevada district court.

3.    The Proof of Claim was established by the Divorce Decree.

The Trustee finally argues that the Proof of Claim is based on the Settlement Agreement, and not the Divorce Decree. However, as addressed above, Tennille received monies based on a divorce decree. Similarly, the debt owed to Tennille is based on the Divorce Decree, not the Settlement Agreement. The Trustee sued Tennille based on the transfer pursuant to the divorce decree under sections 544 and 550. Tennille turned over a portion of the monies received pursuant to the Divorce Decree. Now, Tennille has filed her proof of claim because she is still owed monies under the Divorce Decree entered pre-petition. This claim is allowed, pursuant to 502(h).

**C.    The Proof of Claim is timely.**

To any extent that the Trustee argues that the Proof of Claim is not timely, the Deadline in this matter to file a proof of claim was February 28, 2013. However, Tennille did not have a reason to file a proof of claim until after this Court's Order Granting Motion to Approve Compromise and Settlement on March 25, 2013. Tennille filed a proof of claim on July, 24th, 2013. This is based on the Divorce Decree, entered pre-petition. Thus, Tennille is able to still

JOHNSON & GUBLER, P.C.
LAKES BUSINESS PARK
8831 WEST SAHARA
LAS VEGAS, NEVADA 89117
(702) 471-0065
(702) 471-0075

file a claim after an avoidance, even if the time to file a claim has otherwise run. *See In re*

*Laizure*, 548 F.3d 693 (9th Cir. 2008).

Further, the claim is allowable, pursuant to 11 U.S.C. § 726(a)(1), which states:

> Except as provided in section 510 of this title, property of the estate shall be distributed -
>
> (1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title, proof of which is timely filed under section 501 of this title *or tardily filed on or before the earlier of —*
>
> > (A) the date that is 10 days after the mailing to creditors of the summary of the trustee's final report; or
> >
> > **(B)  the date on which the trustee commences distribution under this section[.]**

11 U.S.C. § 726(a)(1)(B)(emphasis added).

Thus, tardily filed priority claims still retain their priority.  *See In Re Van Gerpen,* 26 F.3d 453 (5th Cir. 2001); *In Re Pacific-Atlantic Trading Co.,* 64 F.3d 1292, 1304 (9th Cir., 1995) ("Section 726(a)(1) does not distinguish between late and timely priority claims."); *In Re Vecchio,* 20 F.3d 555 (2d Cir. 1994).

Therefore, because Tennille's tardily filed claim retains its priority, it should be paid before any amounts due to the Trustee's counsel or other creditors lower in priority under §507.. Tennille's priority claim No. 20 still retains priority even when tardily filed, Tennille's lack of a proof of claim by the proof of claim cut off date does not bar her claim, nor effect its priority status.

////

////

JOHNSON & GUBLER, P.C.
LAKES BUSINESS PARK
8831 WEST SAHARA
LAS VEGAS, NEVADA 89117
(702) 471-0065
(702) 471-0075

**III.    CONCLUSION**

Tennille's claim No. 20 has priority of the administrative claims of the Trustee pursuant to 11 USC §507(a).  The proof of claim arose from a pre-petition Divorce Decree.  Therefore, for the reasons stated above, Tennille respectfully requests that this Court overrule the Trustee's objection to Claim No. 20 and allow Tennille's priority claim No. 20 against the estate to be fully satisfied.

DATED this 9th day of July, 2014.

JOHNSON & GUBLER, P.C.

Matthew L. Johnson (6004)
Russell G. Gubler (10889)
Matthew R. Carlyon (12712)
Lakes Business Park
8831 W. Sahara Avenue
Las Vegas, NV 89117

*Attorneys for Creditor*
*Tennille I. Plise*

JOHNSON & GUBLER, P.C.
LAKES BUSINESS PARK
8831 WEST SAHARA
LAS VEGAS, NEVADA 89117
(702) 471-0065
(702) 471-0075

- 21 -

**CERTIFICATE OF SERVICE**

On this _9th_ day of _July_, 2014, I served the following document(s) (specify):

       1.    RESPONSE TO OBJECTION TO PROOF OF CLAIM NUMBER 20 FILED BY TENNILLE I. PLISE PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 3007; and

       2.    DECLARATION IN SUPPORT OF RESPONSE TO OBJECTION TO PROOF OF CLAIM NUMBER 20 FILED BY TENNILLE I. PLISE PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 3007.

I served the above-named document(s) by the following means to the persons as listed below (check all that apply):

   ☒    a.    **ECF System** (You must attach the "Notice of Electronic Filing," or list all person and addresses and attach additional paper if necessary.)

       Please see attached Electronic Mail Notice List.

   ☐    b.    **United States mail**, postage fully prepaid (List persons and addresses if necessary.)

   ☐    c.    **Personal Service** (List persons and addresses. Attach additional paper if necessary.)

I personally delivered the document(s) to the persons at these addresses:

       ☐    For a party represented by an attorney, delivery was made by handing the document(s) at the attorney's office with a clerk or other person in charge, or if no one is in charge by leaving the documen(s) in a conspicuous place in the office.

       ☐    For a party, delivery was made, by handing the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of adobe with someone of suitable age and discretion residing there.

   ☐    d.    By direct email (as opposed to through the ECF System) (List persons and email addresses. Attach additional paper if necessary.)

       Based upon the written agreement of the parties to accept service by email of a court order, I caused the document(s) to be sent to the persons at the email addresses listed below. I did not receive, within a reasonable

**JOHNSON & GUBLER, P.C.**
LAKES BUSINESS PARK
8831 WEST SAHARA
LAS VEGAS, NEVADA 89117
(702) 471-0065
(702) 471-0075

time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐    e.    By Fax transmission (List persons and fax numbers. Attach additional paper if necessary.)

Based upon the written agreement of the parties to accept service by fax transmission or a court order, I faxed the document(s) to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission is attached.

☐    f.    By messenger (List person and addresses. Attache additional paper if necessary.)

I served the document(s) by placing them in an envelope or package addressed to the person at the addresses listed below and providing them to a messenger for service. (A declaration by the messenger must be attached to this Certificate of Service.)

**I declare under penalty of perjury that the foregoing is true and correct.**

_Annabelle Nudo_                                    _(signature)_
Name of Declarant                                    Signature of Declaration

JOHNSON & GUBLER, P.C.
LAKES BUSINESS PARK
8831 WEST SAHARA
LAS VEGAS, NEVADA 89117
(702) 471-0065
(702) 471-0075

# Mailing Information for Case 12-14724-lbr

## Electronic Mail Notice List

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- **OGONNA M. ATAMOH**   oatamoh@nevadafirm.com,
  rholley@nevadafirm.com;sdwkhtecf@gmail.com;oswibies@nevadafirm.com;apestonit@nevadafirm.com;gbagley@nevadafirm.com
- **ADAM P. BOWLER**   abowler@ccarlyon.com, apbowler@cox.net;docket@ccarlyon.com
- **CANDACE C CARLYON**   ccarlyon@carlyonsmith.com,
  docket@carlyonsmith.com;ccarlyon@carlyonsmith.com;nrodriguez@carlyonsmith.com;cthompson@carlyonsmith.com
- **LINVEL J. COPPEDGE**   jcoppedge@sheacarlyon.com, docket@sheacarlyon.com
- **TIMOTHY S. CORY**   tcory@djplaw.com, csimmons@djplaw.com;salexander@djplaw.com
- **TIMOTHY S. CORY**   tcory@djplaw.com, csimmons@djplaw.com;salexander@djplaw.com
- **NEDDA GHANDI**   bankruptcy@ghandilaw.com
- **EDWARD J. HANIGAN**   ejh@haniganlaw.com, jas@haniganlaw.com
- **JACOB L. HOUMAND**   jhoumand@nelsonhoumand.com,
  vnelson@nelsonhoumand.com;cjorvig@nelsonhoumand.com;kortiz@nelsonhoumand.com;nalcantara@nelsonhoumand.com
- **MATTHEW L. JOHNSON**   annabelle@mjohnsonlaw.com,
  mjohnson@mjohnsonlaw.com;shari@mjohnsonlaw.com;mcarlyon@mjohnsonlaw.com
- **MATTHEW T. KNEELAND**   matthew@sylvesterpolednak.com, bridget@sylvesterpolednak.com
- **SHELLEY D. KROHN**   shelley.trusteekrohn@7trustee.net, NV27@ecfcbis.com;becca.trusteekrohn@7trustee.net
- **JOHN P. LEWIS**   jplewisjr@mindspring.com
- **VICTORIA L NELSON**   vnelson@nelsonhoumand.com,
  jhoumand@nelsonhoumand.com;cjorvig@nelsonhoumand.com;nalcantara@nelsonhoumand.com
- **JORDAN B. PEEL**   jordan@wmb-law.net, bsnow@wmb-law.net;rwoodbury@wmb-law.net
- **MICHAEL D. RAWLINS**   mrawlins@djplaw.com, csimmons@djplaw.com
- **LENARD E. SCHWARTZER**   bkfilings@s-mlaw.com
- **LENARD E. SCHWARTZER**   bkfilings@s-mlaw.com
- **MICHAEL H. SINGER**   dhutchings@mhsingerlaw.com
- **MITCHELL D. STIPP**   mitchell.stipp@yahoo.com
- **JEFFREY R. SYLVESTER**   jeff@sylvesterpolednak.com, tina@sylvesterpolednak.com;bridget@sylvesterpolednak.com
- **DIANE E TEBELIUS**   dtebelius@lesourd.com, nhawthorne@lesourd.com
- **U.S. TRUSTEE - LV - 7**   USTPRegion17.LV.ECF@usdoj.gov
- **GILBERT B, WEISMAN**   notices@becket-lee.com
- **NATALIE L. WINSLOW**   natalie.winslow@akerman.com,
  adam.crawford@akerman.com;debbie.julien@akerman.com;darren.brenner@akerman.com
- **RYAN J. WORKS**   rworks@mcdonaldcarano.com, kbarrett@mcdonaldcarano.com;bgrubb@mcdonaldcarano.com

## Manual Notice List

The following is the list of **parties** who are **not** on the list to receive email notice/service for this case (who therefore require manual noticing/service). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**ALVIN I. GILMORE & ASSOCIATES**
,

**BRANDLIN & ASSOCIATES**
,

**CASHMAN EQUIPMENT COMPANY**
C/O HOLLAND & HART
9555 HILLWOOD DR, 2ND FLR
LAS VEGAS, NV 89134

**DIAMOND MCCARTHY, LLP**
,

**JON E. FIELD**
GOLEGALNV LTD.
4640 S. EASTERN AVENUE
LAS VEGAS, NV 89119

**JON E. FIELD**
LOUIS M. BUBALA III, ESQ.
ARMSTRONG TEASDALE LLP
50 W. LIBERTY ST., STE. 950
RENO, NV 89501

**PAUL M HEALEY**
,

**THOMAS E. SHUCK**
PARKER, MILLIKEN, CLARK, O'HARA ET. AL.
555 S. FLOWER ST., 30TH FLOOR
LOS ANGELES, CA 90071

## Creditor List

Click the link above to produce a complete list of **creditors** only.

## List of Creditors

Click on the link above to produce a list of **all** creditors and **all** parties in the case. User may sort in columns or raw data format.